IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

HALL TANK COMPANY, LLC                                                                    PLAINTIFF

VS.                          CASE NO. 4:12-CV-39-KGB

BRYANT FUEL AND POWER SYSTEMS, INC. AND
BRYANT FUEL TECHNOLOGIES, INC.                                                    DEFENDANTS

**BRIEF IN SUPPORT OF MOTION TO EXCLUDE
EXPERT TESTIMONY OF STEVE HAZEL**

**I.
Introduction**

The opinions offered by Steve Hazel, the damages expert for Bryant Fuel and Power Systems, Inc. ("Bryant Fuel" or "BFPS"), on two subjects are inadmissible and should be excluded from trial. First, Hazel's so-called "cost audit" opinions are inadmissible summary testimony—Hazel is merely serving as a conduit for Bryant Fuel's own calculations of the costs it allegedly incurred in repairing or replacing rejected units. Experts must apply their expertise to the facts to produce an opinion; they may not merely vouch for the accuracy of a party's evidence. Second, Hazel's "comments" regarding government contracting are inadmissible because Hazel, who is an accountant, lacks qualification to offer opinions on causation and government contracting issues. Other "comments" are inadmissible because Hazel is simply summarizing correspondence relevant to various issues in this case, which is not the proper role of an expert. The Court should enter an order prohibiting Hazel from offering these opinions at trial.

## II.
## Background

Hazel's expert report states that Bryant Fuel engaged him and his firm, RGL Forensics, Inc., "to perform analysis and calculation procedures" in this case, "specifically, . . . to provide expert opinion regarding the damages incurred by BFPS as a result of a breach by Hall Tank Company" of subcontracts. (Ex. 1, Original Expert Rep., at 1; Ex. 2, Suppl. Expert Rep., at 1). Those damages opinions fall into three categories: (1) costs necessary to repair or replace rejected units; (2) lost opportunities; and (3) lost profits.[1] (Ex. 1 at 3; Ex. 2 at 2).

With regard to the repair and replacement costs, Hazel performed what he called "a verification of the amounts claimed" on a summary prepared by Bryant Fuel. (Ex. 1 at 4; Ex. 2 at 3). The numbers he used came solely from Bryant Fuel. (Ex. 3, Excerpts from Dep. of Hazel, at 106). Hazel stated, "I don't remember adding anything to their information." (*Id.* at 107). The purpose of Hazel's cost audit is essentially to vouch for the accuracy of the numbers provided by Bryant Fuel:

> Q: What is the purpose of a cost audit?
>
> A: Broadly, it's auditing, for lack of a better term, the amounts, the purpose, the job number, the payment. It's all those dynamics of the various different costs that were given for the repairs, replacements to fix the problem.
>
> Q: Okay. So that's what it is, but what is the purpose of it? Why do you do a cost audit?
>
> A: Well, I mean I can't speak for the attorneys of what they wanted that for specifically, but when we look at it, they basically just

---

[1] Hazel's lost opportunities and lost profits opinions are not at issue in this motion.

>    want some kind of representation from us that the numbers are reasonable, fair, appropriate. Those types of words, I would use.
>
> Q:   That they're accurate?
>
> A:   I think that's fair.

(*Id.*) Hazel thus produced an opinion regarding Bryant Fuel's costs that essentially restates Bryant Fuel's own calculations. (Ex. 1 at 4; Ex. 2 at 3; Ex. 3 at 108).

In his supplemental report, Hazel added what he characterized as "comments related to cost audit and lost profits." (Ex. 2 at 2–3). These "comments" consist of unsupported conclusions that Hazel gleaned from "review[ing] correspondence and documentation between BFPS and various government and other agencies which support a correlation between the actions and Hall and the damages suffered by BFPS." (*Id.* at 2). Hazel made the following general opinions:

- "It was clearly foreseeable that BFPS would require Hall to fulfill its obligations;"
- "As the prime, or general, contractor BFPS would be expected to make a profit from its role in the project;" and
- "Bryant was reasonable to expect quality merchandise that conformed to requested standards, and when products are deemed inferior, that repairs and other corrections be made within required time frames."

(*Id.*) Hazel then proceeded to offer summaries of (1) a September 23, 2011, Trip Report prepared by Visa Consultants, LLC regarding tanks delivered to NAS Patuxent River (also called "PAX River"); (2) an April 5, 2012, letter from the Defense Logistics Agency regarding the need to repair or replace tanks delivered to

PAX River and delays in those deliveries; (3) an "Unsatisfactory" rating on a Contractor Performance Assessment Report; and (4) correspondence from the Combined Joint Task Force-Horn of Africa to BFPS regarding damaged tanks delivered on October 19, 2011. (*Id.* at 3).

Hazel is an accountant whose background is in providing litigation support in the form of economic damages calculations. (Ex. 2 at 16). By his own description, Hazel is "not an expert on governmental contracting from the standpoint of terminations, legal or otherwise, so we're not going to prove liability." (Ex. 3 at 160).

### III.
### Argument

As the proponent of Hazel's expert testimony, Bryant Fuel bears the burden of proving its admissibility. *Menz v. New Holland North America, Inc.*, 507 F.3d 1107, 1114 (8th Cir. 2007) (citing *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001)). Bryant Fuel cannot meet that burden with regard to Hazel's "cost audit" opinions and his "comments related to cost audit and lost profits," so the Court should exclude them.

**A.     The Court should exclude Hazel's cost audit opinions because they are improper conduit opinions and because they are an effort to vouch for Bryant Fuel's credibility.**

The Court should exclude Hazel's cost audit opinions for two reasons. First, they are improper "conduit" opinions, i.e., the passing along of Bryant Fuel's own damages evidence through an expert who provides no analysis in addition to the facts. Second, Hazel's cost audit opinions are improper efforts to vouch for the

credibility of Bryant Fuel's damages calculations.  Either basis is sufficient to exclude the opinions.

> **1. Hazel's cost audit opinions are improper conduit opinions because he has not added any analysis to Bryant Fuel's damages calculations.**

Fed. R. Evid. 703 "does not sanction the simple transmission of hearsay; it only permits an expert opinion based on hearsay" to which the expert adds analysis and reliable conclusions.  *United States v. Tomasian*, 784 F.2d 782, 786 (7th Cir. 1986).  Accordingly, a witness qualified as an expert must add expert analysis to the facts—a witness who merely passes along what he has been told is a summary expert or a conduit expert, which is not allowed.  As Judge Wilson put it several years ago, *See In re Prempro Prods. Liab. Litig.*, 554 F. Supp. 2d 871, 887 (E.D. Ark. 2008) (excluded expert testimony because "having an expert witness simply summarize a document (which is just as easily summarized by a jury) with a tilt favoring a litigant, without more, does not amount to expert testimony"), *aff'd*, 586 F.3d 547 (8th Cir. 2009).

As the Fifth Circuit has observed, "if the witness has gone to only one hearsay source and seeks merely to summarize the content of that source, then he is acting as a summary witness, not an expert.  Since he is introducing the content of the extrajudicial statements or writings to prove truth, his testimony, like its source, is hearsay and is inadmissible unless the source qualifies under an exception to the hearsay rule." *United States v. Williams*, 431 F.2d 1168, 1172 (5th Cir.1970), aff'd en banc, 447 F.2d 1285 (5th Cir. 1971), *cert. denied*, 405 U.S. 954 (1972); *see also U.S. v. Lawson*, 653 F.2d 299, 302 (7th Cir. 1981) (citing *Williams*

for the proposition that a party cannot "simply produce a witness who did nothing but summarize out-of-court statements made by others").

Here, the Court should exclude Hazel's cost audit opinions because they are nothing more than Hazel lending his expertise to Bryant Fuel's own calculations of its damages. Hazel has not performed any sort of calculations or analyzed documents to conclude what damages Bryant Fuel suffered in repairing and replacing rejected units. (Ex. 1 at 4; Ex. 2 at 3; Ex. 3 at 108). Instead, Hazel is passing along Bryant Fuel's own numbers, which were provided to him in the form of a summary. (Ex. 1 at 4). The Court should exclude this improper conduit testimony because expert opinions consisting of nothing more than factual statements transmitted through the expert by a party in order to give the party's factual testimony the patina of "expert" status are inadmissible.

### 2. Hazel's cost audit opinions are improper efforts to vouch for the credibility of Bryant Fuel's damages calculations.

The Eighth Circuit has held that "weighing evidence and determining credibility are tasks exclusive to the jury, and an expert should not offer an opinion about the truthfulness of witness testimony." *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 883 (8th Cir. 1998) (citing *United States v. Rouse*, 111 F.3d 561, 570-71 (8th Cir. 1997)). Another court has discussed the issue further, explaining that "an expert's opinion that another witness is lying or telling the truth is ordinarily inadmissible pursuant to Rule 702 because the opinion exceeds the scope of the expert's specialized knowledge and therefore merely informs the jury that it should

reach a particular conclusion." *United States v. Shay*, 57 F.3d 126, 131 (1st Cir. 1995).

At his deposition, Hazel explained the purpose of the "cost audit" that he performed as providing "basically just want some kind of representation . . . that the numbers [provided by Bryant Fuel] are reasonable, fair, appropriate." (Ex. 3 at 107). In other words, Hazel is opining that Bryant Fuel's records and summaries of those records are accurate. (*Id*.) The Court should not permit Hazel to offer such an opinion because it is nothing more than his vouching for Bryant Fuel's damages calculations. The Court should instead require Bryant Fuel should present this evidence through the testimony of its own witnesses and documents and let the jury decide whether the damages claims are credible and reasonable.

**B.** **The Court should exclude Hazel's "comments related to cost audit and lost profits" because they are improper summaries of documents and because Hazel is not qualified to offer causation testimony.**

Hazel's "comments" are inadmissible for two reasons. First, Hazel acknowledged in his deposition that he is not an expert on government contracting and thus cannot provide causation and liability opinions. Second, Hazel should not be permitted to summarize documents that the jury can read for itself.

**1.** **Hazel has admitted that he is not an expert in government contracting and thus cannot provide testimony outside the area of Bryant Fuel's damages.**

Hazel's first "comments" deal with issues outside the realm of damages: (1) whether "it was clearly foreseeable that BFPS would require Hall to fulfill its obligations;" (2) whether "as the prime, or general, contractor BFPS would be expected to make a profit from its role in the project;" and (3) whether "Bryant was

reasonable to expect quality merchandise that conformed to requested standards, and when products are deemed inferior, that repairs and other corrections be made within required time frames." (Ex. 2 at 2).

Experts must be qualified to offer their opinions, and qualification in one sphere does not necessarily translate to other, related spheres. As the Eighth Circuit puts it, even when an expert "easily qualifies as an expert under Federal Rule of Evidence 702[,] the real question is, what is he an expert about?" *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001). The inquiry here is pretty simple—Hazel is an accountant offered to provide damages testimony. Hazel's deposition testimony makes the question even simpler with regard to government contracting issues. Hazel admitted that he is "not an expert on governmental contracting from the standpoint of terminations, legal or otherwise, so we're not going to prove liability." (Ex. 3 at 160). Despite that concession, Hazel's "comments" are an effort to provide expert opinions—completely unsupported expert opinions—about the very field in which he claimed no expertise. He opines about what is foreseeable regarding contracting obligations. He opines about the parties' expectations. He opines about what is reasonable in the industry. Hazel, by his own admission, is not qualified to offer these opinions. The Court should exclude them.

    **2.    Hazel should not be permitted to summarize documents that he acknowledged "speak for themselves."**

The rest of Hazel's comments are merely summaries of documents. (Ex. 2 at 3). In *Prempro*, Judge Wilson ruled that "having an expert witness simply

summarize a document (which is just as easily summarized by a jury) with a tilt favoring a litigant, without more, does not amount to expert testimony." *In re Prempro*, 554 F. Supp. 2d at 887.  In reaching that opinion, Judge Wilson noted that "ironically, on cross-examination, [the expert], on at least one occasion, took the position that the document 'speaks for itself.'" *Id.* at 886.  The "jurors are capable of reading documents;" they do not need an expert to do it for them. *Id.*  In a sense, this ruling is an extension of the conduit rule—such testimony is not expert opinion because the expert has added no analysis or expertise to the documents.  *See id.* at 887.

Hazel's "comments" added in his expert report attempt to provide precisely the same sort of testimony.  Like the expert in *Prempro*, Hazel simply summarizes correspondence from the various contracting agencies.  (Ex. 2 at 3).  Also like the expert in *Prempro*, Hazel characterized the documents in question as speaking for themselves:

> Q: Mr. Watson asked you a lot of questions going through various letters from the Government.  And are you offering opinions about the meanings of those letters?
>
> A: You know, I'm not going to speak for them.  **I mean they can speak for themselves.  The letters speak for themselves.**

(Ex. 3 at 159 (emphasis added)).  That being the case, Hazel should not be permitted to summarize those letters under the guise of expert testimony.  Bryant Fuel should be required to present those letters to the jury as they are and let the jury draw its own conclusions.

**IV.**
**Conclusion**

Hazel's "cost audit" is improper conduit testimony offered to bolster Bryant Fuel's credibility. His "comments" added in his supplemental expert report go beyond Hazel's qualifications and consist largely of his summarizing of documents that the jury can read on its own. The Court should exclude these improper opinions.

>WRIGHT, LINDSEY & JENNINGS LLP
>200 West Capitol Avenue, Suite 2300
>Little Rock, AR  72201
>Telephone:  501-371-0808
>Fax:         501-376-9442
>Email:      kwilson@wlj.com
>
>By: /s/ Kyle R. Wilson
>      Charles T. Coleman (80030)
>      Kyle R. Wilson (89118)
>      Gary D. Marts, Jr. (2004116)
>      Michael A. Thompson (2010146)
>      Seth R. Jewell (2011175)
>      R. Aaron Brooks (2009145)
>      *Attorneys for Hall Tank Company, LLC*

CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2014, a copy of the foregoing was filed and served on the following via the CM/ECF system:

    Byron Jansen Walker
    Russell P. Bailey
    ROSE LAW FIRM
    120 East Fourth Street
    Little Rock, AR 72201-2893

    Theodore P. Watson
    WATSON & ASSOCIATES, LLC
    925 South Niagara Street, Suite 600
    Denver, CO  80224

    Sharon Steele
    Wojciech Z. Kornacki
    WATSON & ASSOCIATES, LLC
    1629 K Street, N.W.
    Washington, D.C.  20006

    /s/ Kyle R. Wilson
    Kyle R. Wilson